**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**ARREST ON OUT-OF-DISTRICT OFFENSE**

CASE NUMBER: '24 MJ4450

The person charged as DONALD YANG BUDGE, now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the Western District of Washington at Seattle with: Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. Sections 841(a)(1), (b)(1)(A), 846; and Title 18 U.S.C. Section 2.

The charging documents and warrant for the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: November 25, 2024

David Hubbard
Special Agent
Federal Bureau of Investigation

Reviewed and Approved

Dated: November 25, 2024

HUNTER V. NORTON
Assistant United States Attorney

FILED LODGED
RECEIVED
Nov 19, 2024
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY DEPUTY

U.S. Magistrate Judge David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, Plaintiff, vs. DONALD YANG BUDGE, Defendant | Case No. 3:24-mj-05388<br><br>COMPLAINT for VIOLATION<br><br>Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, and Title 18 United States Code, Section 2 |
|---|---|

BEFORE the Honorable David W. Christel, United States Magistrate Judge, Seattle, Washington.

The undersigned Affiant being duly sworn states:

**COUNT ONE**

**(Conspiracy to Distribute Controlled Substances)**

Beginning at a time unknown, and continuing until at least November 14, 2024, in Pierce County, Washington, within the Western District of Washington, and elsewhere, DONALD YANG BUDGE, and others known and unknown, did knowingly and intentionally conspire to distribute controlled substances, including: methamphetamine and N-phenyl-N[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), substances controlled under Title 21, United States Code.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that with respect to DONALD YANG BUDGE, his conduct as a member of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy, involved 500 grams or more of a mixture or substances containing detectable amounts of methamphetamine its salts, isomers, and salts of their isomers.

It is further alleged that with respect to DONALD YANG BUDGE, his conduct as a member of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy, involved 400 grams or more of a mixture or substance containing detectable amounts of fentanyl.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846 and Title 18 United States Code, Section 2.

**COUNT TWO**

**(Distribution of Controlled Substances)**

On or about October 3, 2024, in Pierce County, Washington within the Western District of Washington, and elsewhere, DONALD YANG BUDGE, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, including methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that this offense involved 500 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2.

**COUNT THREE**

**(Distribution of Controlled Substances)**

On or about October 28, 2024, in Pierce County, Washington within the Western District of Washington, and elsewhere, DONALD YANG BUDGE, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

distribution of, a controlled substance, including methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that this offense involved 500 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2.

**COUNT FOUR**

**(Distribution of Controlled Substances)**

On or about November 14, 2024, in Lewis County, Washington within the Western District of Washington, and elsewhere, DONALD YANG BUDGE, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, including methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that this offense involved 500 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, or salts of its isomers.

It is further alleged that this offense involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2.

I, Sara Sherrod, being first duly sworn on oath, depose and say:

**AGENT BACKGROUND AND INTRODUCTION**

1. I, Sara Sherrod, am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since 2013. I am currently assigned to the HSI Blaine, Washington office and I serve as a Task Force Officer on the Skagit County Interlocal Drug Enforcement Unit, a multi-jurisdictional taskforce which investigates a wide array of federal and state charges. I have led numerous federal investigations to include narcotics smuggling and trafficking, human smuggling, child exploitation, illicit trade,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and trafficking in counterfeit goods. I have been the affiant on numerous federal search and arrest warrants. My current assignment involves investigations of high-level drug trafficking organizations ("DTOs") within the Western Washington area and elsewhere.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7) that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I have attended numerous trainings in Drug Investigations, Money Laundering, Social Media Investigations, Fentanyl Awareness, Narcotics Interdiction, and Electronic Surveillance. I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with how narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with how narcotics traffickers use telephones, cellular telephone technology, the internet, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations. I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking. I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled, transported, and distributed. This training and experience form the basis for my opinions expressed below.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested charges, and therefore does not set forth all of my knowledge about this matter.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## SUMMARY OF PROBABLE CAUSE

Summary of Investigation

6. Beginning in or about August 2023, investigators with Homeland Security Investigations (HSI), Federal Bureau of Investigations (FBI), Drug Enforcement Administration (DEA), United States Postal Inspection Service (USPIS), the Skagit County Interlocal Drug Enforcement Unit (SCIDEU) and the Internal Revenue Service-Criminal Investigations (IRS-CI), initiated an investigation into a drug trafficking organization (hereafter referred to as the "Oak Harbor DTO") distributing narcotics and based out of Oak Harbor, Washington. Throughout the investigation, multiple Oak Harbor DTO members were identified.

7. In or about June 2024, investigators seized suspected fentanyl and methamphetamine from mail parcels that were destined to suspected Oak Harbor DTO members. Following a controlled delivery operation of sham narcotics to members of the Oak Harbor DTO, investigators interviewed one of the suspected heads of the Oak Harbor DTO (hereafter referred to as "confidential human source" or "CHS").

8. The CHS agreed to cooperate in this investigation and is providing information to investigators for consideration on pending criminal state charges. The CHS has no convictions for crimes of dishonesty. The CHS has five state felony convictions, with the most recent in within the last ten years, including two counts of unlawful possession of a firearm, two counts of deliver/manufacture of controlled substances, and possession of a stolen vehicle. During the interview, unbeknownst to the CHS, s/he detailed multiple facts relevant to the investigation that were already known to investigators, further establishing her/his credibility. The CHS's identity is known to investigators but is omitted here for his/her safety. Unrelated to the investigation, during



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the time of cooperation the CHS was arrested on two occasions. Once for a misdemeanor assault and a second time for eluding. During the eluding arrest the CHS was found to be in possession of narcotics.

9. Additionally, during this investigation, the CHS was provided a cell phone that had the capability to record the screen display of the device, telephone calls, and create recordings based on the external microphone when a call is not being made. During this investigation 903 recordings were generated. Approximately 288 of those recordings were pertinent to the investigation and captured communications between the CHS and CD1 as intended. A review of those conversations corroborates CHS's information about CD1'S drug trafficking activities. However, investigators have not yet listened to all of the approximate 615 unrelated recordings in detail. These recordings appear to be personal conversations, and or audio captured by the microphone during the CHS' daily activities. However, during spot checks of the recordings it appears that the CHS continues to engage in drug use and likely also engaged in unauthorized drug trafficking offenses.

10. During investigation, investigators learned that a man hereafter referred to as "Cooperating Defendant 1" or "CD1" was based in Arizona and was supplying the Oak Harbor DTO and other drug redistributors located in Pierce County, Washington, with large amounts of fentanyl and methamphetamine. CD1 has prior felony drug convictions in Washington state and was the subject of past DEA investigations.

11. Investigators also learned that DONALD YANG BUDGE (hereafter referred to as "BUDGE"), a former Tacoma-area resident, was supplying CD1 with drugs. In 2023 and 2024, multiple sources reported that an Asian male[1] was a source of supply of drugs and was living in or near Tijuana, Mexico. BUDGE was the subject of previous DEA and USPIS drug investigations. BUDGE has five prior drug felony convictions. Investigators also believe that BUDGE and CD1 had served time together in prison.

---

[1] BUDGE is an Asian male.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. In October and November 2024, investigators conducted multiple controlled delivery operations of drugs supplied by CD1 and BUDGE and conducted a highway interdiction of a large amount of methamphetamine and fentanyl believed to have been supplied by BUDGE.

**October 3, 2024 Controlled Purchase of Methamphetamine in Tacoma, Washington – Count 2**

13. In late September 2024, investigators instructed the CHS to contact CD1 to arrange the controlled purchase of drugs from CD1. On September 30, 2024, the CHS stated that CD1 agreed to sell the CHS 20 pounds of methamphetamine for $10,000 U.S. and that a delivery driver would meet the CHS in the Tacoma, Washington area within the same week to deliver the methamphetamine.

14. On the morning of October 3, 2024, CD1 told the CHS that the load of drugs was in the Tacoma area, and that the CHS should travel to Tacoma to await instructions to pick up the drugs. The CHS told CD1 that the CHS's associate would meet the drug courier to pick up the drugs.

15. Later in the morning, CD1 sent the address 3901 Mason Loop Rd, Unit B, Tacoma, WA and instructed the CHS to have the associate pick up the drugs from that address instead of from a vehicle. An HSI undercover agent, hereafter referred to as "UCA," traveled to the location, and an unidentified young Hispanic male exited from the building and provided a black trash bag containing multiple packages of methamphetamine to the UCA. Surveillance noticed a white Honda sedan with California license plates 8FEB575 parked under a covered parking area marked "B." Surveillance observed as shortly after the UCA left the area, the male who gave the black bag to the UCA appeared to put something in the trunk of the vehicle. An unknown female then drove the vehicle southbound on Interstate 5, where surveillance lost sight of it near Chehalis, Washington.

16. Upon inspecting the black bag and its contents, investigators noticed a hole ripped below the tied-off portion of the bag. Investigators counted a total of 17 individual packages of methamphetamine, for a total weight of approximately 17 pounds.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Investigators instructed the CHS to contact CD1 regarding the apparent missing packages of methamphetamine.

17. On the evening of October 3, 2024, the CHS conducted a recorded video call with CD1. During the call, CD1 utilized a different phone to video call BUDGE to discuss the missing pounds of methamphetamine. CD1 presented the screen of his phone to the CHS, and BUDGE can be seen talking to CD1 regarding the methamphetamine. All three parties denied knowledge of the whereabouts of the missing methamphetamine.

18. All drug evidence was seized and later turned over to DEA Tacoma investigators. A sample field tested positive for methamphetamine. All drug evidence was sent to the DEA Laboratory for chemical analysis. Results are pending.

**October 28, 2024 Controlled Purchase of Methamphetamine in Tacoma, Washington – Count 3**

19. In mid-October 2024, investigators instructed the CHS to contact CD1 to arrange the controlled purchase of drugs from CD1. CD1 arranged for the CHS to purchase 50 pounds of methamphetamine for an up-front payment of $20,000. The CHS was to pick up the drugs from an unknown courier in Tacoma, Washington. On October 26, 2024, CD1 sent a message to the CHS which read, "The eagle has landed". On October 27, 2024, CD1 sent a screenshot of a message to the CHS. The screenshot appeared to depict a message sent by a drug supplier to CD1. A portion of the message read, "It's been up there for days now and ur peeps haven't even made any attempt to get at u about it".

20. On October 28, 2024, CD1 provided the address "2102 S C St Tacoma, WA 98402 Estados Unidos" to the CHS and wrote, "They are waiting call me when you get close". Investigators set up for the controlled purchase in Tacoma, Washington. The CHS was provided a recording device and during communications with CD1, CD1 stated that the deal would be for "30" (pounds of methamphetamine), and that the CHS was to pay the courier $19,000 cash, then send $1,000 directly to CD1 via wire transfer or Cash App. CD1 said the courier was there waiting for the CHS to arrive.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21. A UCA drove the CHS in an undercover vehicle to the south entrance area of the hotel located at 2102 S C St Tacoma, Washington and parked. Agents observed a silver Nissan Altima bearing Arizona license plate CWV7875 pull up to the driver's side of the UC vehicle. The driver and sole occupant of the vehicle was later fully identified. This suspect will be referred to hereafter as "Cooperating Defendant 2" or "CD2[2]." CD2 met the CHS outside the vehicle. The CHS exchanged $19,000 cash for a black trash bag provided by CD2. The CHS entered the UC vehicle and the UCA drove to a predetermined location, where agents opened the black trash bag and found multiple clear plastic bags containing approximately 30 pounds of suspected methamphetamine. Agents conducted a field test of the substance, which resulted presumptive positive for methamphetamine.

22. On the same date, agents conducted surveillance of CD2 and installed a tracking device on the Nissan Altima in Tacoma, Washington, pursuant to tracking warrant 24-MJ-05346, authorized by U.S. Magistrate Judge Theresa L. Fricke on October 22, 2024.

23. On November 2, 2024, tracker data for the Nissan Altima showed that it departed Washington traveling south on I-5. On the same date, a uniformed officer with Oregon State Patrol conducted a traffic stop of the Nissan Altima near mile post 204 near Eugene, Oregon. During the stop, the officer identified CD2, who provided a driver's license. The CD also provided his telephone number to the officer. Rental car paperwork provided during the stop showed that CD2 rented the Nissan Altima in Modesto, California.

24. The UCA later viewed the driver license photo of CD2 and confirmed that the photograph appears to depict the same individual who delivered the methamphetamine to the CHS during the controlled purchase on October 28, 2024.

---

[2] CD2 has not been promised any consideration for his information but is believed to be cooperating in the hope of receiving some type of consideration on future federal drug charges.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Highway Interdiction of Methamphetamine and Fentanyl on November 14, 2024 – Count 4**

25. On November 8, 2024, investigators were granted a Federal Search Warrant in the Western District of Washington (24MJ-05369) by U.S. Magistrate Judge David Christel for real-time location data for CD2's phone. Investigators began monitoring the location data.

26. Data showed that on November 12, 2024 at approximately 8:00 p.m., the phone began to travel southeast out of Modesto, California.

27. On November 13th, 2024, the phone arrived in the Victorville, California area (northeast of Los Angeles). I know, based on my training and experience, that Victorville and other locations in that area are common locations used to stage drugs after they are smuggled into the United States from Mexico, prior to their being transported elsewhere in the United States.

28. From Victorville, the device traveled north, reaching Modesto, California in the early morning hours of November 14th, 2024, then continued northbound, eventually entering Oregon.

29. On November 14, 2024, investigators contacted Enterprise Rent-A-Car. A company representative voluntarily provided information that on November 12, 2024, CD2 rented a white 2023 Toyota Corolla with California license plate 9EWC941. CD2 did not set a return date for the rental.

30. On November 14, 2024 at approximately 4:00 p.m., surveillance observed the Corolla traveling northbound on Interstate 5 near Clackamas, Oregon. The movements of the Corolla and location data for CD2's cell phone were consistent, leading agents to believe that CD2 was in the Corolla. A short time later, the vehicle entered Washington and stopped at a gas station in Castle Rock, Washington. Agents observed CD2 exit the Corolla and enter the gas station. A short time later, CD2 departed in the Corolla.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31. Agents then coordinated for Centralia Police Department (CPD) Officer, who was driving a marked CPD patrol vehicle equipped with lights and sirens, to stop the Corolla as it traveled north on I-5 at mile post 74 near Centralia. CD2 was identified as the driver of the vehicle. There was also a male passenger in the vehicle.[3]

32. CPD officers utilized a CPD K-9 to conduct an exterior sniff of the Corolla and received a positive alert. CD2 provided verbal consent to officers to search the Corolla. Officers located several pieces of luggage in the trunk which contained black plastic garbage bags. Inside the garbage bags, officers located multiple clear plastic bags containing approximately 149 pounds methamphetamine and multiple heat-sealed plastic packages containing approximately 80,000 blue pills (suspected to contain fentanyl). Agents later conducted a field test on the suspected methamphetamine, which resulted presumptive positive for methamphetamine.

33. CD2 was detained and transported to an interview room at the CPD, where he was interviewed in Spanish by an agent who is fluent in Spanish. CD2 acknowledged that he understood Miranda warnings. During the interview, CD2 stated the following:

34. CD2 admitted that he was transporting illegal drugs to the Western District of Washington to distribute them. He stated that he did not know exactly how much or what type of drugs he was transporting. CD2 stated that his role is to transport drugs from California to Washington, then deliver the drugs to various individuals in the Tacoma, Washington area. He sometimes received U.S. currency from the individuals who he delivered the drugs to.

35. CD2 does all of this at the direction of an unidentified male, with whom CD2 only communicates over the telephone, via WhatsApp. CD2 has never met the male in person but refers to him as "the Korean."

36. CD2 showed agents a chat in WhatsApp in CD's cell phone with a contact that CD2 identified as that of "the Korean." An investigator observed that the chat

---

[3] The passenger's involvement, if any, in the offenses under investigation is unknown at this time and they were released at the scene.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

showed that from approximately October 28, 2024, to November 2, 2024, CD2 was in the Tacoma area and distributed drugs to multiple individuals at the Korean's direction.

37. CD2 stated that he was initially put in contact with the Korean by an unidentified Mexican male (hereafter "UM8116") who uses a telephone number ending in 8116. CD2 was put in contact with UM8116 by a friend who is not involved in drug trafficking, but who knew that CD2 was looking for work. CD2 contacted UM8116 by telephone. CD2 believes that UM8116 lives in Los Angeles, California.

38. In October 2024, UM8116 directed CD2 to travel to the Los Angeles, California area, where CD2 picked up the drugs from unidentified suspects (who were unknown to the CD) at UM8116’s direction. CD2 then transported the drugs and distributed them to various suspects in Washington, at the direction of the Korean.

39. Regarding the drugs located in the rental car when he was stopped, CD2 stated that he was directed by UM8116 to pick up the drugs near Los Angeles, in "the desert." CD2 stated that was headed to Tacoma with the drugs, where he would wait for “the Korean” to direct him regarding the distribution of the drugs.

40. CD2 showed agents a chat in WhatsApp with the UM8116. All messages occurred on November 14, 2024. CD2 stated that he frequently deleted messages with UM8116. The messages showed that CD2 was in contact with UM8116 as he traveled north toward Washington, including sending his ETA to Tacoma and updates on progress of the trip and weather conditions. At one point, UM8116 sent CD2 a contact, which was the telephone number for “the Korean.” UM8116 told CD2 to call him (referring to the contact for the Korean).

41. Based on the foregoing, and my knowledge of the overall investigation, I believe that “the Korean” who was directing CD2 is BUDGE. That belief was confirmed by a recent interview of CD1.

<u>Interview of CD1</u>

42. In mid-November, 2024, investigators contacted CD1. CD1 was *Mirandized* and agreed to speak with investigators. As set forth above, CD1 has a



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lengthy criminal history that includes multiple state and federal convictions for controlled substance offenses. CD1 has not been promised any consideration for his information but is believed to be cooperating in the hope of receiving some type of consideration on future federal drug charges.

43. CD1 admitted that, for approximately the last five years, he has been coordinating the distribution of methamphetamine in the Western District of Washington. CD1 identified BUDGE as his source-of-supply for methamphetamine. CD1 positively identified a booking photograph of BUDGE.

44. CD1 stated that BUDGE currently lives in Tijuana, Mexico.[4] CD1 stated that he (CD1) acts as a "middleman." CD1 arranges drug transactions with drug buyers in the Western District of Washington, then contacts BUDGE, who contacts his "people" to deliver the drugs to the buyers.

45. CD1 stated that BUDGE communicates by the messaging application Telegram. Agents conducted a search of CD1's cell phone and observed communications between CD1 and a contact that CD1 identified as a Telegram account used by BUDGE.

46. Regarding a controlled purchase on October 3, 2024, as further above, CD1 stated that BUDGE was the supplier of the 17 pounds of methamphetamine. BUDGE told CD1 via messages on Telegram to send the buyer to the residence in Tacoma where the transaction was conducted. CD1 was shown a still photo taken from a video of CD1 speaking to BUDGE following the 17-pound transaction (discussed above), and CD1 positively identified BUDGE.

47. Regarding the controlled purchase on October 28, 2024, as further described in this affidavit, CD1 stated that BUDGE was also the supplier for the 30 pounds of methamphetamine. BUDGE told CD1 via messages on Telegram to send the buyer to the hotel in Tacoma where the transaction was conducted. Agents reviewed Telegram communications between CD1 and BUDGE in CD1's cell phone which occurred on October 28, 2024 and observed that BUDGE sent CD1 a message with the

---

[4] Investigators have independently confirmed that BUDGE is in fact living in Mexico in the Tijuana area.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

address for the hotel in Tacoma. Messages between BUDGE and CD1 continued and confirmed that the drugs were delivered.

**CONCLUSION**

44. Based on the foregoing facts, I have probable cause to believe Donald Yang BUDGE has committed the aforementioned offenses.

SARA C SHERROD Digitally signed by SARA C SHERROD Date: 2024.11.18 15:30:36 -08'00'

SARA SHERROD, Complainant
Homeland Security Investigations
Special Agent

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 19th day of November, 2024.

THE HON. DAVID W. CHRISTEL
United States Magistrate Judge



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

United States of America
v.

DONALD YANG BUDGE

*Defendant*

Case No. 3:24-mj-05388

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* DONALD YANG BUDGE, who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Count 1: Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846
Count 2: Distribution of Controlled Substances, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 18 U.S.C. § 2
Count 3: Distribution of Controlled Substances, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 18 U.S.C. § 2
Count 4: Distribution of Controlled Substances, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 18 U.S.C. § 2

Date: 11/19/2024 9:37 AM

*Issuing officer's signature*

City and state: Tacoma, Washington

David W. Christel, United States Magistrate Judge
*Printed name and title*

**Return**

This warrant was received on *(date)* ________, and the person was arrested on *(date)* ________
at *(city and state)* ________.

Date: ________

*Arresting officer's signature*

*Printed name and title*